Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL VIII**

| | | |
|---|---|---|
| Pueblo de Puerto Rico<br><br>Apelado<br><br>vs.<br><br>Félix R. Quintero González<br><br>Apelante | KLAN202400556 | **APELACIÓN**<br>procedente del Tribunal de Primera Instancia, Sala Superior de Manatí<br><br>Crim. Núm.:<br>C4TR2023-0129<br>C4TR2023-0130<br>C4MG2023M0070<br><br>Sobre:<br>Ley de Tránsito |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y el Juez Cruz Hiraldo.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de agosto de 2024.

Comparece ante nos, el señor Félix R. Quintero González (Sr. Quintero González o apelante), quien presenta recurso de apelación en el que solicita la revocación de las sentencias emitidas el 29 de abril de 2024,[1] en los casos C4TR2023-0129, C4TR2023-0130, y C4MG2023M0070. Mediante los dictámenes impugnados, el Tribunal de Primera Instancia, Sala Superior de Manatí, encontró culpable al apelante y lo sancionó con las siguientes multas: (1) $200.00 en el caso C4TR2023-0129, (2) $500.00 en el caso C4TR2023-0130, y (3) $500.00 en el caso C4MG2023M0070.

Examinada la solicitud de autos, la totalidad del expediente y el estado de derecho aplicable ante nuestra consideración, confirmamos el dictamen mediante los fundamentos que expondremos a continuación.

---

[1] Notificadas el 2 de mayo de 2024.

Número Identificador

SEN2024 _____

**I.**

Por hechos ocurridos el 25 de julio de 2023, el Ministerio Público presentó tres denuncias contra el Sr. Quintero González. Específicamente, se le imputó infringir las siguientes disposiciones penales, a saber: (1) el Art. 3.23 de la Ley Núm. 22-2000, 9 LPRA sec. 5073, (2) el Art. 5.07 de la Ley Núm. 22-2000, 9 LPRA sec. 5127, y (3) el Art. 4 (i) de la Ley Núm. 253-1995, 26 LPRA sec. 8053.

El juicio en su fondo se celebró el 22 de abril de 2024. Escuchados los argumentos de las partes y aquilatada la evidencia presentada, el Tribunal de Primera Instancia declaró culpable al apelante por la comisión de los tres delitos menos graves que le fueron imputados.[2] En cuanto a la pena, le impuso el pago total de $1,200.00 en concepto de multa, cantidad que se desglosa de la siguiente manera: (1) multa base de $200.00 en el caso C4TR2023-0129, (2) multa base de $500.00 en el caso C4TR2023-0130, y (3) multa base de $500.00 en el caso C4MG2023M0070.

En corte abierta, la representación legal del Sr. Quintero González solicitó se le permitiera a su representado pagar las multas, ya fuese a plazos o mediante la prestación de servicio comunitario. En la alternativa, peticionó que, al amparo del Art. 67 del Código Penal, 33 LPRA sec. 5100, se redujera el monto total de las multas en un 25%. Por su parte, el Ministerio Público argumentó que la solicitud de la defensa era improcedente, ya que la ley especial dispone la pena y el modo de satisfacerla.

Atendidas las posturas de ambas partes, el foro apelado concluyó lo siguiente:

> *De igual manera, aquí estamos hablando de que a su cliente se ha encontrado culpable y convicto de tres delitos, tres artículos que están comprendidos en leyes especiales y esas leyes especiales contienen las penas*

---

[2] Todos los dictámenes recurridos fueron emitidos ese mismo día, o sea, el 22 de abril de 2024. Dichas determinaciones fueron notificadas el 29 de abril de 2024.

*ya establecidas por el legislador para eso, ¿verdad? Ni las leyes especiales, entiéndase Ley 253 ni la Ley 22, ambas leyes especiales, disponen que las penas de multa se pueden pagar a plazos; eso no lo dispone la ley especial, tampoco el código penal que las multas se pueden pagar a plazos.*[3]

Insatisfecho, el Sr. Quintero González recurre ante este foro apelativo intermedio, y señala la comisión de los siguientes errores:

A. *Erró el Honorable Tribunal de Primera Instancia al rechazar de su faz la solicitud de pagos a plazos hecha por el Apelante, en contravención al Artículo 55 del Código Penal de Puerto Rico.*

B. *Erró el Honorable Tribunal de Primera Instancia al rechazar de su faz la solicitud de conversión de multa a servicio comunitario, al amparo del Artículo 56 del Código Penal. Siendo así por entender que el principio de especialidad contravenía la aplicación de dicho Artículo.*

C. *Erró el Honorable Tribunal de Primera Instancia al denegar la solicitud de rebaja de multa al amparo del Artículo 67 del Código Penal, sin haber permitido la vista evidenciaria correspondiente.*

**II.**

**-A-**

El Código Penal de Puerto Rico, 33 LPRA sec. 5001 *et seq.*, constituye la medida legislativa que regula, de forma general, nuestro ordenamiento jurídico penal. En lo concerniente a nuestra controversia, el Libro Primero del antedicho cuerpo normativo reconoce varios principios de vital importancia para la aplicación de la ley penal, entre estos, el principio de especialidad. También conocido como el concurso de disposiciones penales, esta regla de interpretación estatutaria es la encargada de determinar cuál es el precepto penal que debe regir la situación, particularmente cuando concurren una diversidad de leyes penales que regulan la misma materia. *Pueblo v. Cordero Meléndez*, 193 DPR 701, 707 (2015).

Su propósito es aclarar el conflicto creado por el llamado "concurso aparente de leyes", entiéndase, aquellas situaciones

---

[3] Véase, "Transcripción del Acto de Dictar Sentencia" pág. 2.

donde dos o más disposiciones penales aparentan regular una misma conducta, pero estas no son susceptibles de aplicación conjunta y, por tanto, se excluyen mutuamente.[4] *Íd.*, a las págs. 707-708. Se le denomina "concurso aparente de leyes", puesto que no se trata de un conflicto real, porque el propio ordenamiento jurídico nos ofrece los criterios necesarios para determinar la aplicabilidad de una u otra disposición penal. *Íd.*

A esos efectos, el Art. 9 del Código Penal, 33 LPRA sec. 5009, en términos literales, dispone lo sigue:

> *Cuando la misma materia se regula por diversas disposiciones penales:*
>
> *(a) **La disposición especial prevalece sobre la general**.*
>
> *(b) La disposición de mayor alcance de protección al bien jurídico absorberá la de menor amplitud, y se aplicará la primera.*
>
> *(c) La subsidiaria aplicará sólo en defecto de la principal, si se declara expresamente dicha subsidiaridad, o ésta se infiere.*

(Énfasis nuestro).

En lo que nos concierne, el inciso (a) del precitado artículo se emplea cuando un hecho delictivo es regulado por varias disposiciones, pero una de ellas es de carácter general y la otra posee carácter especial. En tales circunstancias, según la máxima *lex specialis derogat legi genereali*, la disposición especial desplaza a la general. *Pueblo v. Ramos Rivas*, 171 DPR 826, 837 (2007). Es decir, en estos casos el Estado no tiene discreción para aplicar una u otra ley, sino que, por mandato legislativo, se hace mandatoria la aplicación del estatuto especial. *Pueblo v. Cordero Meléndez, supra*, a la págs. 715-716.

Sobre el principio de especialidad, la Profa. Dora Nevares expresa lo siguiente:

---

[4] Lo anterior, toda vez que nuestra Constitución impide castigar a una persona por ambas disposiciones al mismo tiempo. Véase, Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1.

*La relación de especialidad puede darse de varias maneras. Primero, cuando se trata de una disposición especial y una disposición de carácter general dentro de la misma ley. El ejemplo de esta situación es el caso de los tipos simples y agravados de un delito. Si consideramos el tipo simple como la disposición de carácter general y el tipo agravado como la disposición de carácter especial, encontramos que el primero está en una relación de género a especie con el segundo. El tipo agravado contiene todos los elementos de la disposición general, o sea del tipo simple, pero además incluye uno o más elementos que lo particularizaran.*

[...]

*La relación de especialidad puede también darse al comparar una ley especial con una ley general, como lo es el Código Penal; o entre dos leyes especiales, una de las cuales está en relación a la otra de especie a género.* D. Nevares-Muñiz, <u>Código Penal de Puerto Rico</u>, 2da ed., San Juan, Instituto para el Desarrollo del Derecho, 2013, págs. 20–21.

Ahora bien, la aplicación del concurso de disposiciones penales no se limita únicamente al supuesto en el que una conducta es prohibida y regulada por dos estatutos. Sino que, aparte de los tipos delictivos, también cobija otras materias o asuntos como, por ejemplo, las penas. *Pueblo v. Hernández Villanueva*, 179 DPR 872, 912 (2010).

Por otro lado, el inciso (c) del el Art. 9 del Código Penal, *supra*, permite la aplicación de la parte general del Código Penal a una conducta regulada por una ley especial. Así también lo reconoce el Art. 1 del Código Penal, 33 LPRA sec. 5001, el cual dispone que "[l]os principios contenidos en el Libro Primero de la Parte General de este Código aplican a la conducta regulada por otras leyes penales, salvo que éstas dispongan lo contrario".

Sobre este particular, nuestra Alta Curia ha expresado lo siguiente:

*Por otro lado, el primer párrafo de este articulado permite la aplicación de la parte general del Código Penal a una conducta regulada por una ley especial. Ello será así, siempre y cuando la aplicación de la parte general no sea contraria o esté en conflicto con la ley especial. La parte general del Código Penal aplicará a una situación regulada por una ley especial cuando sea necesario para suplir alguna laguna de esta última*

*sujeto, claro está, a los principios generales del derecho penal. Pueblo v. Ramos Rivas, supra,* a la pág. 837.

Finalmente, debemos mencionar que, salvo que exista una determinación legislativa expresa, no cabe hablar del principio de especialidad cuando no existe una obligación de implementar ninguna de las disposiciones que coinciden en su aplicación a una misma situación de hechos. *Pueblo v. Hernández Villanueva, supra,* a la pág. 901. En otras palabras, no se violenta el principio de especialidad cuando el concurso aparente de leyes regula una misma conducta que involucra la sana discreción del juez sentenciador. *Íd.*

Discutida la normativa aplicable al caso, procedemos a aplicarla entonces a la controversia de este caso.

**III.**

Toda vez que los señalamientos de error presentados por la parte peticionaria se encuentran íntimamente relacionados, procedemos a discutirlos conjuntamente.

Según revela el tracto procesal discutido, el Tribunal de Primera Instancia emitió "Sentencia" en los casos C4TR2023-0129, C4TR2023-0130 y C4MG2023M0070, declarando culpable al Sr. Quintero González por los delitos menos graves que le fueron imputados. A modo de sanción, se le impuso al apelante el pago de una suma global por $1,200.00 en concepto de multas, **según establecen las leyes especiales bajo las cuales se le acusó**.

El Sr. Quintero González solicitó varios remedios, al amparo del Código Penal, para mitigar el pago de las multas. En particular, peticionó se le permitiera pagar las multas a plazos o mediante la prestación de servicio comunitario. En la alternativa, solicitó se redujera el monto total de las multas en un 25%. Sin embargo, el foro primario negó su petición, conforme el concurso de disposiciones penales estatuido en el Art. 9 del Código Penal,

*supra.* Fundamentó su determinación en que: (1) al apelante se le acusó por tres artículos comprendidos en leyes especiales, (2) dichos estatutos contienen penas ya establecidas, y (3) ninguno dispone que las penas de multa se pueden pagar a plazos, ni de algún otro modo.

En su escrito, el Sr. Quintero González argumenta que el foro apelado erró al negarse conceder los remedios solicitados, toda vez que las disposiciones del Código Penal son de aplicación supletoria, y las leyes especiales en controversia no contienen lenguaje desplazador alguno. Aunque el Estado expresó no tener oposición a que se devuelva el caso al foro *a quo* para la celebración de una vista evidenciaria, **por entender que el Tribunal de Primera Instancia actuó correctamente**, **procede la confirmación de las sentencias apeladas**.

En esencia, el Sr. Quintero González fundamenta su postura en el caso de *Pueblo v. Rivera Cintrón*, 185 DPR 484, 497 (2012), donde nuestro Tribunal Supremo expresó que "en nuestra jurisdicción la parte general del Código Penal aplica a las leyes penales especiales, a menos que éstas contengan disposición en contrario". Su contención es que "las disposiciones aplicables de la Ley 22-2000 y la Ley 253 no contienen lenguaje que desplace la aplicación supletoria del Código Penal".[5] A su entender, "[c]uando el legislador quiere desplazar el Código Penal, así lo hace constar".[6]

Al escudriñar detenidamente la Ley Núm. 22-2000, 9 LPRA sec. 5001 *et seq.*, y la Ley Núm. 253-1995, 26 LPRA sec. 8051 *et seq.*, nos percatamos de que ninguno de estos estatutos prohíbe taxativamente la aplicación de la parte general del Código Penal a los delitos tipificados en ella. Sin embargo, en *Pueblo v. Ramos Rivas*, *supra*, a la pág. 837, nuestro Alto Foro aclaró que **la parte**

---

[5] Véase, recurso pág. 9.
[6] *Íd.*

**general del Código Penal será aplicable a una conducta regulada por una ley especial**, **siempre y cuando la aplicación de la parte general no sea contraria o esté en conflicto con la ley especial**, **o cuando sea necesario para suplir alguna laguna**.

Por consiguiente, nos corresponde evaluar las leyes especiales bajo las cuales se acusó al apelante, con el fin de determinar si los remedios solicitados por éste, al amparo de la parte general del Código Penal, están o no en conflicto con las sanciones impuestas por la Ley Núm. 22-2000, *supra*, y con la Ley Núm. 253-1995, *supra*.

En primer lugar, el Sr. Quintero González solicitó que se le permitiera pagar las multas mediante la prestación de servicio comunitario. Basó su petición en el Art. 56 del Código Penal, 33 LPRA sec. 5089, el cual lee como sigue:

> *El tribunal, en el ejercicio de su discreción o a solicitud del sentenciado, evidenciada su incapacidad de pagar, podrá autorizar el pago o amortización de la parte insoluta de la multa mediante la prestación de servicios comunitarios.*

[…]

En su recurso, el apelante sostiene que el foro primario tenía que otorgar este remedio, toda vez que él es indigente y solicitó dicho remedio. No estamos de acuerdo.

En primer lugar, los tres delitos menos graves bajo los cuales fue acusado claramente disponen que la persona convicta **será sancionada con pena de multa**. Según la Ley Núm. 22-2000, *supra*, el término de "multa" se refiere a "**una pena monetaria** que se le impone a una persona al conductor y/o al dueño registral del vehículo por haber incurrido en una falta administrativa o penal". Véase, inciso 63a del Art. 1.66-A de la Ley Núm. 22-2000, 9 LPRA sec. 5001. (Énfasis suplido). A través de todo el texto legislativo, se hace alusión en un sinnúmero de

ocasiones a que **el infractor tiene que pagar las multas**.[7] La prestación de servicios comunitarios solo se contempló en ciertos casos específicos, y como una restricción adicional; no como sustituto de la multa. Véase, por ejemplo, Art. 7.04 (b) (2) (iii) de la Ley Núm. 22-2000, 9 LPRA sec. 5204.

No tan solo eso, sino que, la prestación de servicio comunitario es inconsistente con la clara intención legislativa de imponer multas, que no es otra que recaudar dinero para el Fondo General del Gobierno de Puerto Rico. El propio estatuto reconoce que "**todos los pagos por las multas impuestas al amparo de esta Ley**, **sean tipificadas como delitos o faltas administrativas**, **ingresarán al Fondo General del Gobierno de Puerto Rico**".[8] Véase. Art. 27.01 de la Ley Núm. 22-2000, 9 LPRA sec. 5721. (Énfasis provisto).

Por su parte, la intención legislativa detrás del Art. 12 de la Ley 253-1995, 26 LPRA sec. 8060, igualmente indica que el legislador quiso castigar **mediante el pago de una multa** a toda persona que conduzca su vehículo por las vías públicas sin haber adquirido el seguro de responsabilidad obligatorio.

Sin duda, **el remedio dispuesto en el Art. 56 del Código Penal**, *supra*, **está en conflicto con las sanciones impuestas por la Ley Núm. 22-2000**, *supra*, **y con la Ley Núm. 253-1995**, *supra*, **y consecuentemente**, **no podía ser concedido**.

En segundo lugar, el Sr. Quintero González solicitó que se le permitiera pagar las multas a plazo. Basó su petición en el Art. 55 del Código Penal, 33 LPRA sec. 5088, el cual establece que:

> *La multa será satisfecha en un término de 30 días contados a partir de su imposición. No obstante, a solicitud del convicto y a discreción del tribunal, la*

---

[7] Véase, por ejemplo, el Art. 23.05 (l) de la Ley Núm. 22-2000, *infra*; el Art. 23.07 de la Ley Núm. 22-2000, 9 LPRA sec. 5687; el Art. 23.08 (d) (5) de la Ley Núm. 22-2000, 9 LPRA sec. 5688; y el Art. 25.06 de la Ley Núm. 22-2000, 9 LPRA sec. 5709.

[8] El propio artículo reza que **sus disposiciones prevalecerán sobre cualquier otra disposición de ley que sea inconsistente**.

*multa podrá pagarse en su totalidad o en plazos dentro de un término razonable a partir de la fecha en que ha quedado firme la sentencia.*

[…]

En su escrito, el apelante expresa que el foro apelado debió permitirle sufragar el pago de las multas en plazos, ya que basta con que el convicto así lo solicite, y que el tribunal, dentro de su discreción, lo permita. No le asiste la razón.

Como es conocido, las disposiciones de una ley deben interpretarse de manera integrada, y siguiendo el propósito que tuvo el legislador al aprobarla. *Pueblo v. Roche*, 195 DPR 791, 804 (2016). Por consiguiente, al ejercer nuestra facultad interpretativa, debemos siempre procurar que se cumpla cabalmente con la intención legislativa y el propósito social que las inspira. *Íd.*

Otro principio de hermenéutica aplicable a este caso es el de *expressio unius est exclusio alterius*, que establece que, cuando en la ley se mencionan expresamente una o más cosas de una clase, se excluyen otras de la misma clase. Cónsono con ello, si la Legislatura opta por incluir o mencionar alguna cosa, palabra o concepto específico, se entienden excluidas aquellas que no fueron mencionadas. Véase, R.E. Bernier y J.A. Cuevas Segarra, <u>Aprobación e Interpretación de las Leyes en Puerto Rico</u>, 2da ed., San Juan, Pubs. JTS, 1987, Vol. 1, pág. 345. Así pues, tratándose de una omisión intencional, lo que procede es dar fiel cumplimiento a la voluntad legislativa y, en consecuencia, no añadir lo omitido. J.M. Farinacci Fernós, <u>Hermenéutica Puertorriqueña: Cánones de Interpretación Jurídica</u>, San Juan, Ed. InterJuris, 2019, pág. 156.

Este es un caso típico de *expressio unius est exclusio alterius.* Bajo este principio de interpretación legal, se puede obtener una inferencia negativa de la exclusión del lenguaje de una disposición legal que está incluida en otras disposiciones del

mismo estatuto. Es decir, donde la Asamblea Legislativa incluye un lenguaje particular en una sección de un estatuto, pero lo omite en otra sección de la misma ley, provoca que se presuma que la legislatura actúa intencional y deliberadamente en la inclusión o exclusión dispar.

Por ejemplo, al apelante se le acusó por las siguientes disposiciones penales, a saber:

(1) Art. 3.23 de la Ley Núm. 22-2000, *supra,* el cual dispone:

*Será ilegal realizar cualquiera de los siguientes actos:*

*(a) Conducir un vehículo de motor por las vías públicas de Puerto Rico sin estar debidamente autorizado para ello por el Secretario o con una licencia de conducir distinta a la requerida para manejar dicho tipo de vehículo. **Toda persona que viole esta disposición incurrirá en delito menos grave y convicta que fuere será sancionada con pena de multa de doscientos (200) dólares.** [...]*

(Énfasis nuestro).

(2) Art. 5.07 de la Ley Núm. 22-2000, *supra,* el cual provee:

*(A) Toda persona que condujere un vehículo de forma imprudente o negligentemente, con menosprecio de la seguridad de personas o propiedades, **incurrirá en delito menos grave y convicta que fuere será sancionada con pena de multa no menor de quinientos (500) dólares ni mayor de mil (1,000) dólares.***

(Énfasis suplido).

Como puede observarse, el legislador tipificó, como delitos menos graves, ciertas conductas cuya inobservancia conlleva **pena de multa**. En caso del Art. 3.23 de la Ley Núm. 22-2000, *supra,* la pena es fija. Empero, el Art. 5.07 de la Ley Núm. 22-2000, *supra,* dispone una multa base de 500 dólares, la cual puede aumentarse hasta 1,000.00. **Ninguno de los precitados artículos provee que las multas pueden ser satisfechas a plazo**.

**Sin embargo, existen otras disposiciones en la Ley Núm. 22-2000, *supra*, donde el legislador sí contemplo el beneficio**

**del plan de pago**.  A modo de ejemplo, el Art. 23.06 de la Ley Núm. 22-2000, 9 LPRA 5686, dispone lo siguiente:

> *Toda persona **que al momento de renovar y/o solicitar un duplicado de su licencia de conducir o permiso de su vehículo de motor** mantenga balance de deuda por concepto de multas sobre su licencia de conducir o vehículo de motor **podrá acogerse a un plan de pago** [...]*

(Énfasis provisto).

No obstante lo anterior, el mencionado plan de pago solo es aplicable al pago de multas impuestas sobre la licencia de conducir o el vehículo de motor, y no se hizo extensivo a las multas impuestas por el tribunal como sanción por la comisión de un **delito menos grave**.[9]  Como si fuera poco, el propio artículo que reconoce la posibilidad de un plan de pago dispone que:

> *Todo Conductor que sea multado luego de haberse acogido a un plan de pago deberá pagar **la totalidad de dicha multa** antes de renovar su licencia.*
>
> *Al momento de realizar un traspaso o cesión de derechos, la persona a quien se le haya concedido un plan de pago sobre multas gravadas contra el permiso de un vehículo de motor o su tablilla tendrá que satisfacer **la deuda en su totalidad**.*

(Énfasis nuestro).

Ciertamente, tales expresiones hacen evidente la verdadera intención de nuestra Asamblea Legislativa de que, **salvo los casos particulares donde aplique el mencionado plan de pago**, el **infractor deberá satisfacer la deuda en su totalidad**.

Por ende, **el remedio establecido en el Art. 55 del Código Penal**, *supra*, **está en conflicto con las sanciones impuestas por la Ley Núm. 22-2000**, *supra*, **y no podía ser concedido**.

A igual conclusión llegamos respecto al pago de la multa impuesta bajo las disposiciones de la Ley Núm. 253-1995, *supra*. En ninguna parte del estatuto se contempló la posibilidad de

---

[9] Recordemos que, el concepto de "multa" se refiere a aquella "pena monetaria que se le impone a una persona al conductor y/o al dueño registral del vehículo por haber incurrido en una falta administrativa **o penal**". Véase, inciso 63a del Art. 1.66-A de la Ley Núm. 22-2000, *supra*. (Énfasis nuestro). No toda violación a la Ley Núm. 22-2000, *supra*, es tipificada como delito menos grave.

satisfacer multas mediante plan de pago. La intención legislativa es clara: **determinada la responsabilidad por un tribunal**, **el pago se efectuará en su totalidad**. Véase, por ejemplo, el Art. 10 de la Ley Núm. 253-1995, 26 LPRA sec. 8058. Siendo este el trato especial, la ley general queda excluida.

Finalmente, el Sr. Quintero González solicitó que, al amparo del Art. 67 del Código Penal, *supra*, se redujera el monto total de las multas en un 25%. La concesión de tal remedio tampoco procedía en derecho.

Sobre este particular, debemos mencionar que la Ley Núm. 22-2000, *supra*, ya establece el derecho a un descuento sobre la totalidad del pago del boleto, cuyo porcentaje dependerá de la fecha en que se emite el pago. Véase, Art. 23.05 (h) de la Ley Núm. 22-2000, 9 LPRA sec. 5685. **El legislador limitó este derecho a las faltas administrativas de tránsito**. **Tal derecho no se extendió al pago de las multas impuestas por el tribunal como sanción por la comisión de un delito menos grave**.

Conforme el principio de *expressio unius est exclusio alterius*, concluimos que, **como se incluyó un derecho a descuento sobre el pago de faltas administrativas**, **pero tal lenguaje se omitió en cuanto al pago de una multa penal**, **la intención del legislador fue que**, **sobre el pago de multas penales**, **no se concediese reducción o descuento alguno**. Tal omisión nos permite presumir o inferir que la legislatura actuó de forma intencional y deliberada en la exclusión de este derecho.

Esto queda más claro cuando el Art. 3.02 de la Ley Núm. 22-2000, 9 LPRA sec. 5052, dispone que, una vez "transcurridos los treinta (30) días que tiene un ciudadano para pagar **un boleto por infracción a esta Ley**, [y este] no tuviera la capacidad económica para satisfacer la deuda, podrá solicitar acogerse a un plan de pago". (Énfasis suplido). Reiteramos que, el plan de pago

únicamente es aplicable al pago de **faltas administrativas**, y no así al pago de multas impuestas por el tribunal como sanción por la comisión de un **delito menos grave**.

Respecto a la Ley Núm. 253-1995, *supra*, enfatizamos que la intención legislativa es exigir la totalidad del pago de la multa. En consecuencia, la ley general queda excluida frente al trato especial.

De esta forma, **el remedio establecido en el Art. 67 del Código Penal**, *supra*, **está en conflicto con las sanciones impuestas por la Ley Núm. 22-2000**, *supra*, **y con la Ley Núm. 253-1995**, *supra*. **Ante este hecho**, **el remedio solicitado no podía ser concedido**.

Hacemos énfasis en que, en este tipo de casos, lo importante es determinar si, mediante la aprobación de la ley especial, la Asamblea Legislativa pretende dar un trato especial a la conducta específicamente legislada. *Pueblo v. Cordero Meléndez, supra*, a la pág. 710. Examinadas las disposiciones penales especiales que anteceden, concluimos que el legislador tuvo la intención de restringir las alternativas del infractor respecto al modo de satisfacer una multa impuesta por la comisión de un delito menos grave, limitándose a exigir el pago total de la sanción. Habiendo el legislador decidido exigir el pago total de la multa penal, los tribunales no debemos dar la espalda a tal mandato legislativo. Por lo tanto, determinamos que actuó correctamente el Tribunal de Primera Instancia al exigir el pago total de la multa, amparándose en el principio de especialidad.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, confirmamos las sentencias apeladas, emitidas por el Tribunal de Primera Instancia, Sala Superior de Manatí.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones